# SEALED

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

USAO 2012R00796

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

2013 JUN 27 P 3: 42

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | *   **CRIMINAL NO. ELH-13-0043** |
| v. | * |
| | *   **(Conspiracy, 18 U.S.C. § 371; Theft of** |
| JOEANN WHARTON | *   **Government Property, 18 U.S.C. § 641;** |
| and | *   **Aggravated Identity Theft, 18 U.S.C.** |
| JOHN WHARTON, | *   **§ 1028A(a)(1); Aiding and Abetting,** |
| | *   **18 U.S.C. § 2; Title XVI Benefit Fraud,** |
| Defendants | *   **42 U.S.C. §  1383(a)(2) & (3); Forfeiture,** |
| | *   **18 U.S.C. § 981(a)(1)(c);** |
| | *   **28 U.S.C. 2461(c))** |
| | * |
| | * |

\*\*\*\*\*\*

## SUPERSEDING INDICTMENT

### COUNT ONE

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Superseding Indictment:

1.      The Social Security Administration ("SSA") was an independent agency of the United States within the United States government which administered programs under the Social Security Act, Title 42, United States Code, Section 301, et seq. ("the Act").  These programs included the Social Security Old-Age, Survivors, and Disability Insurance and related programs under Title II of the Act ("Title II Program").  These programs also included the Supplemental Security Income for the Aged, Blind, and Disabled and related programs under Title XVI of the Act ("SSI Program").

2.      The Title II Program included the Retirement Insurance Benefits Program, which paid monthly cash benefits to individuals who had worked and paid taxes into Social Security.  To be eligible for monthly cash benefits, individuals must have reached the age of 62 and paid a portion

of their prior wages into the program. Benefits were determined based on average salary and number of years of employment. The Title II Program also included the Disability Insurance Benefits Program. Like the Retirement Insurance Benefits Program, the Disability Insurance Benefits Program provided for payment of disability benefits to medically "disabled" individuals who are "insured" under the Act by virtue of their contributions to the Social Security trust fund through the Social Security tax on their earnings, as well as to certain disabled dependents of insured individuals. The Title II Program also included the Survivor's Insurance Benefits Program, which provided benefits to children of a retired, disabled or deceased workers if the children were under the age of 18, or until the age of 19 if they attended primary or secondary school.

3.    The SSI Program paid monthly cash benefits to individuals who had been found by SSA to be medically disabled, and who have, in addition, been found by SSA to be eligible for the SSI Program on the basis of financial need, as determined in relation to both "income" and "resources" (as those terms are defined for purposes of the Act). Eligibility for SSI Program benefits depended upon the severity of the applicant's disability. The amount of benefit depended upon: (1) how much other income the beneficiary received; (2) the beneficiary's living arrangements; and (3) other circumstances affecting the beneficiary's financial needs. Eligibility for the SSI Program was conditioned on the beneficiary providing complete and accurate information to SSA regarding income and living arrangements, both at the time of application and on an ongoing basis.

4.    A representative payee is an individual approved by SSA to manage a beneficiary's funds to ensure that their basic human needs, including food, clothing and shelter, are met. Representative payees occupy important positions of trust and are obligated by law to ensure that federal funds intended for vulnerable Americans with severe mental and physical disabilities are

2

properly spent for their care and benefit.  Prior to being approved as a representative payee, an individual must have completed an application, been advised of the specific rules and responsibilities associated with the position, and have expressly agreed to abide by those rules and responsibilities.

5.      Medicaid was a jointly funded, federal-state health insurance program for low-income and needy people, including those who are medically disabled, who are eligible to receive SSI Program and other federally assisted income maintenance payments.  Maryland automatically provided Medicaid benefits to people eligible for Supplemental Security Income (SSI ) benefits. In these States, the SSI application is also the Medicaid application. Medicaid eligibility starts the same months as SSI eligibility.

6.      **JOEANN WHARTON** applied for SSI Program benefits in or about October 1996 and became entitled to benefits at that time based on a diagnosis of Mental Retardation.  **JOEANN WHARTON** continued to receive SSI Program benefits until at least in or about December 2012, at which time she received benefits in the amount of $698 per month.  During that period, **JOEANN WHARTON** received regular mailed notices from SSA informing her that she had a legal obligation to report any change in her living arrangements, among other obligations.

7.      In or about January 2000, **JOEANN WHARTON** became entitled to Maryland Medicaid benefits due to her move from New York to Maryland, and because she had previously qualified for SSI Program benefits as a resident of New York.  Between in or about January 2000 and in or about January 2013, Maryland Medicaid paid out $117,770 in services for **JOEANN WHARTON**.

8.      **JOEANN WHARTON** applied for SSI Program benefits for her son L.W. as his representative payee in or about June 1993, and he became entitled to benefits no later than in or

3

about March 1995. **JOEANN WHARTON** was approved as representative payee for L.W. in or about November 1993. **JOEANN WHARTON** continued to receive SSI Program benefits on L.W.'s behalf until at least in or about December 2004. During that period, **JOEANN WHARTON** received regular mailed notices from SSA informing her of her legal obligation to report changes in living arrangements, and to spend the SSI Program benefits for the care and benefit of her son L.W.

9.     **JOEANN WHARTON** applied for Title II Program survivor's benefits for her granddaughters E.W. and C.W. as their representative payee in or about April 2002, and the granddaughters became entitled to benefits at that time based on the earnings record of their deceased mother L.J.W. **JOEANN WHARTON** continued to receive Title II Program survivor's benefits on C.W.'s behalf until at least in or about July 2011, at which time C.W. received benefits in the amount of $832 per month. **JOEANN WHARTON** continued to receive Title II Program survivor's benefits on E.W.'s behalf until at least in or about August 2012, at which time E.W. received benefits in the amount of $876 per month. During that period, **JOEANN WHARTON** received regular mailed notices from SSA informing her of her legal obligation to report changes in living arrangements, and to spend the Title II Program benefits for the care and benefit of her granddaughters E.W. and C.W.

10.     **JOHN WHARTON** applied for Title II Program disability benefits in or about September 1995 and became entitled to benefits at that time based on a diagnosis of Osteoarthrosis. **JOHN WHARTON** continued to receive Title II Program disability benefits until January 2007, at which time his Title II Program benefits converted from disability to retirement benefits. **JOHN WHARTON** continued to receive Title II Program retirement benefits until at least in or about June 2013, at which time he received benefits in the amount of $1,069 per month.

4

**The Conspiracy and Scheme to Defraud**

11.     Between at least in or about June 1993 and in or about June 2013, in the District of

Maryland and elsewhere, the defendants,

**JOEANN WHARTON
and
JOHN WHARTON,**

did unlawfully, knowingly, and willfully, conspire, combine, confederate and agree to commit

offenses against the United States, that is:

        a.     to embezzle, steal, purloin, and knowingly convert to their use and the use of

                another, any money of the United States and any department and agency

                thereof, whose value exceeded $1,000, in violation of Title 18, United States

                Code, Section 641; and

        b.     to knowingly possess and use, without lawful authority, a means of

                identification of another person, during and in relation to theft of government

                property, in violation of 18 U.S.C. Sections 1028A(a)(1), (a)(4) and (5);

**Manner and Means of the Conspiracy and Scheme to Defraud**

12.     It was part of the conspiracy and scheme to defraud that **JOEANN WHARTON**

applied for SSI Program disability benefits in or about October 1996 under false pretenses, by

claiming that she was living separately from her husband, **JOHN WHARTON**, when in truth and

fact they were living together at that time.  **JOEANN WHARTON** made that false representation

to SSA knowing full well that she would not have qualified for SSI Program disability benefits if she

were living with **JOHN WHARTON**.

13.     It was further part of the conspiracy and scheme to defraud that **JOEANN**

**WHARTON** applied for and received SSI Program disability benefits as representative payee for her son L.W., which benefits she was required to spend for the care and benefit of L.W., when in fact she converted those benefits for the use of herself and **JOHN WHARTON**. **JOEANN WHARTON** received these benefits without informing L.W. that she was doing so, and during a period when L.W. did not live with her or **JOHN WHARTON**.

14.     It was further part of the conspiracy and scheme to defraud that **JOEANN WHARTON** applied for and received Title II Program survivor's benefits as representative payee for her granddaughters E.W. and C.W., who were entitled to receive survivor's benefits based on the earnings record of their deceased mother L.J.W. **JOEANN WHARTON** converted those benefits for the use of herself and defendant **JOHN WHARTON**. **JOEANN WHARTON** continued to receive and convert to her own use the survivor's benefits she was required to spend for the care and benefit of her granddaughters, even during a period when her granddaughters no longer lived with her.

15.     It was further part of the conspiracy and scheme to defraud that **JOHN** and **JOEANN WHARTON** made numerous false statements to SSA about their living arrangements and about other matters material to SSA's determination of benefits.  Among other matters, the defendants falsely certified to: (a) living separately when in truth and fact they lived together; (b) earning no additional income when in truth and fact they had earned income during the relevant reporting period; and (c) spending benefits for the care and benefit of their son and granddaughters when in truth and fact they spent those benefits on themselves.

16.     It was further part of the conspiracy and scheme to defraud that **JOHN WHARTON** used a false identity, in the name "James Wharton," and the SSN XXX-XX-1376, to establish a

6

separate earnings record with SSA, and to conceal income from SSA that would otherwise be reported under his true SSN.

17.     It was further part of the conspiracy and scheme to defraud that **JOHN WHARTON** used the "James Wharton" false identity primarily or exclusively to earn income after 1995, at which time he had qualified for Title II Program disability benefits under his true identity.

18.     It was further part of the conspiracy and scheme to defraud that **JOHN WHARTON** applied for Title II Program retirement benefits under the "James Wharton" false identity in or about April 2010, and began receiving Title II Program benefits under that false identity.   **JOHN WHARTON** opened a bank account at Citibank on April 8, 2010, using the name "James Wharton" and an address in Brooklyn, NY, into which the Title II Program retirement benefits were paid by direct deposit.   **JOHN WHARTON** then used a debit card issued on that account to withdraw the benefits at automatic teller machines (ATM's) in and around Baltimore, MD.

19.     It was further part of the conspiracy and scheme to defraud that **JOHN WHARTON** obtained various identity documents in the name "James Wharton," including a Maryland Driver's License issued on November 10, 2009, which he then used to obtain employment and for other purposes.

20.     It was further part of the conspiracy and scheme to defraud that **JOEANN** and **JOHN WHARTON** took steps to conceal their receipt of benefits from their son L.W. and their granddaughters C.W. and E.W., such as by preventing family members from seeing correspondence or payments received from SSA, and by telling L.W., C.W., and E.W. that **JOEANN** and **JOHN WHARTON** had not received any benefits on their behalf, knowing that to be false.

21.     It was further part of the conspiracy and scheme to defraud that **JOEANN**

7

**WHARTON** forged the signature of her granddaughter C.W. on a bank check issued by the U.S. Treasury on or about July 13, 2011, and on a "Student's Statement Regarding School Attendance," which **JOEANN WHARTON** submitted to SSA on or about March 3, 2011.

### Overt Acts

23.    In furtherance of the conspiracy and scheme to defraud, and to effect the objects thereof, **JOEANN** and **JOHN WHARTON** committed the following overt acts in the District of Maryland and elsewhere:

a.    On or about July 26, 2000, **JOEANN WHARTON** filled out a Form SSA-8203 "Statement for Determining Continuing Eligibility for Supplemental Security Income Payments" on which she falsely certified that she shared the same household with her son L.W.

b.    On or about July 13, 2001, **JOHN WHARTON** provided the name "James L Wharton" when arrested by a police officer from the Baltimore City Police Department.

c.    On or about January 31, 2003, **JOEANN WHARTON** falsely certified on a Form SSA-8203 "Statement for Determining Continuing Eligibility for Supplemental Security Income Payments" that she had resided with her son L.W. since November 1, 2000, when in truth and fact he was not living with her during that period.

d.    On or about November 10, 2009, **JOHN WHARTON** applied for and received a Maryland Driver's License in the name "James L Wharton" at a Maryland Motor Vehicle Administration branch office in Loch Raven, MD.

e.    On or about April 8, 2010, **JOHN WHARTON** opened checking account XXXXXX1036 at a Citibank branch in Brooklyn, NY in the name "James Wharton," and provided a Maryland Driver's License in the same name as proof of his identity.

f. On or about May 28, 2010, **JOHN WHARTON** used a debit card associated with Citibank account XXXXXX1036 to withdraw cash at an ATM located at 5225 Belair Rd., Baltimore, MD.

g. On or about March 3, 2011, **JOEANN WHARTON** forged the signature of her granddaughter C.W. on a Form SSA-1372 "Student's Statement Regarding School Attendance."

h. On or about July 14, 2011, **JOEANN WHARTON** forged the endorsement of her granddaughter C.W. on a U.S. Treasury check in the amount of $832, and deposited the check in M&T Bank checking account XXXXXX8191.

i. On or about August 16, 2012, **JOHN WHARTON** falsely certified on a Form SSA-795 "Statement of Claimant or Other Person" that his granddaughters C.W. and E.W. had lived with himself and **JOEANN WHARTON** since 2002.

j. On or about September 4, 2012, **JOHN WHARTON** signed an application for employment at Uptown Press Inc., a printing business located in Baltimore, MD, in the name "James Wharton," and provided a Social Security Card in the same name, and bearing SSN XX-XXX-1376.

k. On or about August 27, 2012, **JOEANN WHARTON** deposited a check in the amount of $722 made out to "James Wharton," and issued by Uptown Press Inc., in M&T Bank checking account XXXXXX8191.

l. On or about November 28, 2012 **JOEANN WHARTON** deposited a check in the amount of $234 made out to "James Wharton," and issued by Uptown Press Inc., in M&T Bank checking account XXXXXX8191.

m. On or about December 13, 2012, **JOEANN** and **JOHN WHARTON** mailed

written statements to SSA in which each claimed to have been separated from the other since 1985.

      n.     On or about May 3, 2013, **JOHN WHARTON** used a debit card associated with Citibank account XXXXXX1036 to withdraw cash at an ATM located at 7330 Harford Rd., Baltimore, MD.

18 U.S.C. § 371

## COUNT TWO

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 10 and 12 through 23 of Count One are incorporated here.

2.      On or about December 13, 2012, in the District of Maryland, the defendants,

### JOEANN WHARTON
### and
### JOHN WHARTON,

in a matter within the jurisdiction of SSA, knowingly and willfully made and caused to be made a

false statement and representation of a material fact for use in determining rights to any benefit; to

wit, the defendants submitted written statements to SSA in which they claimed to have been

separated since 1985, when they well knew that this was false, and that they had in truth and fact

been living together since that time.

42 U.S.C. § 1383a(a)(2)

11

## COUNT THREE

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 10 and 12 through 23 of Count One are incorporated here.

2.     Between in or about October 1996 and in or about December 2012, in the District of Maryland, the defendant,

### JOEANN WHARTON,

having knowledge of the occurrence of any event affecting her initial or continued right to payment of SSI Program benefits, did conceal and fail to disclose said event with intent to fraudulently secure payment in a greater amount than is due and when no payment is authorized; to wit, the Defendant knowingly concealed and failed to disclose that she lived with her husband, **JOHN WHARTON**, for the purpose of causing SSA to continue to pay SSI Program benefits when she was otherwise ineligible to receive such payments.

42 U.S.C. § 1383(a)(3)

## COUNT FOUR

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 10 and 12 through 23 of Count One are incorporated here.

2.      Between in or about October 1996 and in or about December 2012, in the District of

Maryland, the defendants,

**JOEANN WHARTON**
**and**
**JOHN WHARTON,**

did embezzle, steal, purloin, and knowingly convert to their use and the use of another, any money

of the United States and any department and agency thereof, whose value exceeded $1,000, namely

SSI Program benefits paid to defendant **JOEANN WHARTON**.

18 U.S.C. § 641
18 U.S.C. § 2

13

## COUNT FIVE

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 10 and 12 through 23 of Count One are incorporated here.

2.      Between in or about April 2002 and in or about August 2012, in the District of

Maryland, the defendants,

**JOEANN WHARTON**
**and**
**JOHN WHARTON,**

did embezzle, steal, purloin, and knowingly convert to their use and the use of another, any money

of the United States and any department and agency thereof, whose value exceeded $1,000, namely

Title II Program survivor's benefits for the care and benefit of their granddaughters E.W. and C.W.

18 U.S.C. § 641
18 U.S.C. § 2

## COUNT SIX

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 10 and 12 through 23 of Count One are incorporated here.

2.      Between in or about April 2010 and in or about June 2013, in the District of

Maryland, the defendants,

**JOEANN WHARTON**
**and**
**JOHN WHARTON,**

did embezzle, steal, purloin, and knowingly convert to their use and the use of another, any money

of the United States and any department and agency thereof, whose value exceeded $1,000, namely

Title II Program retirement benefits paid under the SSA record of "James L Wharton," SSN XXX-

XX-1376.

18 U.S.C. § 641
18 U.S.C. § 2

## COUNT SEVEN

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 10 and 12 through 23 of Count One are incorporated here.

2.     Between in or about January 2000 and in or about January 2013, in the District of

Maryland, the defendants,

**JOEANN WHARTON**
**and**
**JOHN WHARTON,**

did embezzle, steal, purloin, and knowingly convert to their use and the use of another, any money

of the United States and any department and agency thereof, whose value exceeded $1,000, namely

Medicaid benefits paid to defendant **JOEANN WHARTON.**

18 U.S.C. § 641
18 U.S.C. § 2

## COUNT EIGHT

The Grand Jury for the District of Maryland further charges that:

1.       Paragraphs 1 through 10 and 12 through 23 of Count One are incorporated here.

2.       On or about July 14, 2011, in the District of Maryland , the defendant,

### JOEANN WHARTON,

during and in relation to a felony violation of Title 18, United States Code, Section 641, that is, theft

of government property as set forth in Count Five of this Superseding Indictment and incorporated

here by reference, did knowingly possess and use, without lawful authority, a means of identification

of another person, that is the name and signature endorsement of her granddaughter C.W.

18 U.S.C. § 1028A(a)(1)

17

## **FORFEITURE ALLEGATION**

The Grand Jury for the District of Maryland further charges that:

1.     Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction under this Superseding Indictment.

2.     As a result of the offenses set forth in the Superseding Indictment, the defendants,

**JOEANN WHARTON
and
JOHN WHARTON,**

shall forfeit to the United States any and all property constituting, or derived from, any proceeds obtained directly or indirectly, as a result of this offense, and all property traceable to such property obtained directly or indirectly as a result of any such violations.

3.     The property to be forfeited includes, but is not limited to: (a) all monies paid into M&T Bank checking account number XXXXXXXXXX3491 by the SSI Program after June 1993; (b) all monies paid into M&T Bank checking account number XXXXXXXXXX3491 by the Title II Program after April 2002; and (c) all monies paid into Citibank checking account XXXXXX1036 by the Title II Program after April 2010.

4.     If any of the property described in paragraphs 2 and 3 above as being subject to forfeiture, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third person;

        c.     has been placed beyond the jurisdiction of the Court;

18

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to

seek forfeiture of any other property of the defendant.


18 U.S.C. § 981(a)(1)(c)
28 U.S.C. § 2461(c)


Rod J. Rosenstein
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Dated: _____, 2013

19