**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**UNITED STATES OF AMERICA**          \*

**v.**                                           \*          **Criminal No. ELH-13-043**

**JOEANN WHARTON**                   \*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*
**DEFENDANT'S STATEMENT OF POINTS AND
AUTHORITIES RELATED TO SEARCH WARRANT ISSUES**

The defendant Joeann Wharton, for herself and her codefendant John Wharton, through her undersigned counsel, hereby submits the following Statement of Points and Authorities to assist the  Court in preparation for the oral argument on the validity of the search warrant, said argument scheduled for July 1, 2014.

> **1.  The validity of a search warrant is determined without regard to what the warrant ultimately uncovers and what evidence is discovered as a result of the search.**

*United States v. Byars*, 273 U.S. 28, 29-30 (1927) (a search that was not lawful when conducted ". . .is not made lawful by what it brings to light;"); *Maryland v. Garrison*, 480 U.S. 79, 85 (1987) ("Those items of evidence that emerge after the warrant is issued have no bearing on whether the warrant was validly issued."); *United States v. Rivera*, 768 F.Supp. 16, 21 (D. Puerto Rico 1991) (same, in connection with warrant evidence suppressed for violation of the particularity clause).

Virtually all of the "evidence" presented by the government at the hearing was *post hoc* information that either was not known at the time of warrant (*e.g.*, where Mr. Wharton showers), or not presented to the magistrate judge.

**2.  The materiality assessment  is limited to consideration of the information within the warrant affidavit itself, and not what the affidavit *could* have said if the government had provided additional information establishing probable cause.  The consideration is limited to the four corners of the affidavit.**

*United States v. McCain*, 271 F.Supp.2d 1187, 1192-93 (N.D. Ca. 2003) ("Under the *Franks* test, when an intentional or reckless misrepresentation in an affidavit is necessary to a magistrate's finding that *that affidavit* supports probable cause, the warrant must be invalidated. 'The fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error.'" quoting *United States v. Davis*, 714 F.2d 896, 899 (9th Cir. 1983), (emphasis in original); and ". . .[I]t is not the affiant's belief that supports probable cause, but the magistrate's determination based on the facts **set forth on the face of the affidavit**.  It is also not the post hoc presentation of evidence absent from the affidavit that will support probable cause, but what is presented to the magistrate at the time he issues the warrant." (emphasis supplied).

*United States v. Boyce*, 601 F.Supp. 947, 955 (D. Minn. 1985)("Under *Franks* whether or not an intentional or reckless misrepresentation in a search warrant affidavit was material in the issuing magistrate's determination of probable cause is a key issue. If a defendant establishes by a preponderance of the evidence that the affiant intentionally or recklessly included false material in the search warrant affidavit, then the reviewing court must excise that information and determine if the information remaining in the affidavit still supports a finding of probable cause. *Franks* [*v. Delaware*, 438 U.S. 154. 98 S.Ct. 2674 (1978)], 438 U.S. at 155-56, 98 S.Ct. at 2676-77. Similarly, the reviewing court must add to the search warrant affidavit intentional or reckless omissions, and determine if the new information causes the affidavit to no longer support a determination of probable cause." (citations omitted).

**3.  The government cannot simply choose to believe one set of facts and withhold contrary material information.  It is the role of the judicial officer to reconcile factual discrepancies.**

*United States v. McCain*, 271 F.Supp.2d 1187, 1192-93 (N.D. Ca. 2003)("The government now offers extensive transcripts of wiretap conversations which it maintains unambiguously establish probable cause to believe that McCain and Stepney are engaged in narcotics trafficking.  **They argue that because Inspector Hanley knew these conversations existed, he truly believed allegations stated in the affidavit that McCain was engaged in trafficking and storage of narcotics. However, it is not the affiant's belief that supports probable cause, but the magistrate's determination based on the facts set forth on the face of the affidavit.**  It is also not the post hoc presentation of evidence absent from the affidavit that will support probable cause, but what is presented to the magistrate at the time he issues the warrant." (emphasis supplied ); and

* * *

"Inspector Hanley's genuine belief in the overall existence of probable cause does not excuse a reckless disregard for truth in the affidavit upon which the magistrate's finding was based.").

*United States v. Simmons*, 771 F.Supp.2d 908, 916 (N.D. Ill. 2011)(quoting *United States v. Dorfman*, 542 F.Supp. 345, 367 (N.D.Ill.1982), *aff'd sub nom. United States v. Williams*, 737 F.2d 594, 604 (7th Cir.1984), (in holding that *Franks* applies to material omissions: "'If the government had unfettered power to pick and choose which facts to present to the magistrate regardless of how misleading the presentations were, the magistrate's review of the affidavit would be meaningless.  The magistrate would not be provided with a fair opportunity to review the government's evidence in making the probable cause determination.'")

*United States v. Vigeant*, 176 F.3d 565, 574n.9 (1st Cir. 1999(holding that the omission of negative information about informant's reliability was not excused even where there was independent information that corroborated the informant's information).

*Wilson v. Russo*, 212 F.3d 781, 787 (3rd Cir. 2000)("We cannot demand that police officers relate the entire history of events leading up to a warrant application with every evocative detail that would interest a novelist or a gossip'", quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993). . . On the other hand, one of the reasons for requiring a neutral magistrate to evaluate probable cause is that an uninterested party is presumably better suited to review and evaluate the facts than an officer pursuing a lead."; and "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993).

**4.  The government's very sparse recitation of the basis to believe that John Wharton resided in the entirety of the Utrecht Road address is selective, self-serving, and misleading.**

*Illinois v. Gates*, 462 U.S. 213, 239 (1983)("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are based.").

*United Sates v. McCain*, *supra*., 271 F.Supp.2d at 1195 ("As in *Smith* [118 F.Supp.2d 1125 (D.Colo.2000)], Inspector Hanley's failure to alert the magistrate that he was interpreting and summarizing evidence forced the magistrate to rely on the judgment of law enforcement

officers rather than exercising independent judgment as he was required to do.")

Paragraph 20 of the affidavit provides all of the "evidence" presented to the reviewing magistrate to support the proposition that John Wharton resided in and by inference, had control over, the entire residence.  These factual claims are restricted to two assertions: (1) in two sentences, it indicates that the Dish and BG&E bills for the Utrecht Road home are in Mr. Wharton's name; and (2) it expressly states: "Your affiant also knows from interviews in June 2013 with Lesean [sic] Wharton and his sister Tasha Muriel that John and Joeann are currently living at the SUBJECT PREMISES." This short statement omits ANY suggestion that the house had two separate areas of control. *See* paragraph 5C, *infra*.  Even more, the reference to LeSean Wharton and Tasha Muriel is affirmatively misleading by using only part of the information from LeSean Wharton and Tasha Muriel; both LeSean Wharton and Tasha Muriel had told the government (Mr. Gray and Mr. Nitze) at several times, including specifically in June, 2013, in under oath grand jury testimony, that Mr. and Mrs. Wharton lived separately within the Utrecht Road residence. Paragraph 20 itself  refers to receiving the information from LeSean Wharton and Tasha Muriel in "June, 2013." Presumably, this is a direct reference to their grand jury testimony. The edited description of the information from LeSean Wharton and Tasha Muriel is at least recklessly, if not intentionally, misleading.

**5. The test for materiality is whether inclusion of the omitted information would defeat the claim of probable cause.**

*United States v. Boyce*, 601 F.Supp. 947, 955 (D. Minn. 1985)("Similarly, the reviewing court must add to the search warrant affidavit intentional or reckless omissions, and determine if the new information causes the affidavit to no longer support a determination of probable cause"

(citations omitted).

      **A.  At its most minimal**, the affidavit fails to include the complete information from LeSean Wharton and Tasha Muriel from June, 2013.  An honest representation of the information from LeSean Wharton and Tasha Muriel in the Affidavit at ¶ 20 should have read: "Your affiant also knows from interviews in June 2013 with Lesean Wharton and his sister Tasha Muriel that John and Joeann are currently living at the SUBJECT PREMISES. **In those interviews with LeSean Wharton and Tasha Muriel, Mr. Wharton and Ms. Muriel each indicated that their parents occupied different sections of the Utrecht Road residence**." (bold indicating the required additional information). If that last and truthful sentence had been added, Magistrate Judge Gallagher could **not** have issued a search warrant for Mrs. Wharton's area in order to recover material related to John Wharton.

      B. The evidence that the affidavit recites in the first two sentences of ¶ 20 does not speak to the question of **how** the living arrangements at Utrecht Road are configured.  It only shows that two vendors had indicated that Mr. Wharton pays the bill for the entire household.  Of course, this language is the typical type of language often used in search warrant affidavits to show an individual's control, **where there is no contrary evidence**.  In this case, the vice of this language is its utter ordinariness and nonchalance, and in using such language in such a way, the government buried the issue of control. So, not only does the vendor language not address the actual issue of separate quarters, its use lulls the uninformed reader into believing without a second thought that Mr. Wharton has control of the entire house. This thought process works particularly well given the blithe assertion that LeSean Wharton and Ms. Muriel have confirmed that very point within the last 30 days.

      C.  The mischaracterization of the information from Mr. Wharton and Ms. Muriel along with the vendor information are particularly egregious given what the government knew at the time the affidavit was drafted and submitted.   The government ignored the following: the several written statements by the Whartons that they lived separately within the residence; the Social Security Administration's own historical information reflecting two units, Pretrial Services' indication at Mrs. Wharton's  initial appearance for the original indictment in January, 2013, that Ms. Wharton had stated that she lived separate from her husband within the Utrecht home; defense counsel's assertions in the course of grand jury litigation in the Spring of 2013 that there were two separate living units; public school and social services records which reflected multiple units; and Chaquiera and Essence Wharton's statements to SA Gray that their grandparents lived separately at Utrecht Road. Even crediting SA Gray's testimony that the granddaughters never provided that information because he never asked, does nothing.  It means that SA Gray never sought (and apparently purposely never sought) this crucial information from the two individuals most sympathetic to the government's case and who had actually lived in the premises.  His justification for not seeking this information, *i.e.*, their information was dated, glides over the fact that he himself relied upon historical information, and what happened in the past is probative (perhaps not dispositive, but at least probative)of what is going on at present. Intentionally refraining from seeking probative evidence from the granddaughters – in effect, acting with willful blindness –  is the very definition of recklessness or intentionality.

      All of the above was information recklessly and/or intentionally omitted, and which, had it been included in whole or in part, would have caused the magistrate to refuse to issue a search warrant for the **entire** house.

**6.  The fact of Mrs. Wharton's earlier indictment does not support probable cause for a search warrant for John Wharton material in Mrs. Wharton's portion of the house.  In addition, there is nothing asserted in the affidavit to link the allegations in Mrs. Wharton's pending indictment to John Wharton's use of two identities.**

*United States v. Acosta*, 110 F.Supp.2d 918, 928-39 (E.D.Wis.2000)("I find that an indictment does not constitute probable cause to issue a search warrant.  The problem with relying upon an indictment to supply probable cause for a search warrant is that it asks the magistrate to subordinate his or her own judgment to that of the grand jury . . ., and asks the magistrate merely to ratify the bare conclusions of others, rather than to form an independent judgment." (citations omitted); and "[i]f the government has evidence of criminal activity to present to the grand jury, there is nothing tp prevent it from disclosing such evidence to the magistrate judge so that he or she can exercise independent judgment." (citations omitted).

**7.  The presence of a motive to omit certain facts supports the conclusion that the affiant's failure to include material information was done recklessly or intentionally.**

*United States v. Simmons*, 771 F.Supp.2d 908, 916-20 (N.D. Ill. 2011)(after reciting numerous authorities for the principle that recklessness and intentionality can be inferred from the importance of the information omitted, finding that the affiant had an obvious reason for failing to include negative information about informant's credibility because such information would have been critical to the magistrate's assessment of all of the circumstances.)

There are at least two significant reasons why the government would choose to ignore the dispute.  First,  the government had no evidence to present – and presented none in the affidavit – that Mr. Wharton documents would be in Mrs. Wharton's living area, and so to disclose the dispute to the magistrate would be to risk not being able to search the entire building.  Secondly, information that the Whartons lived separately in the same building conflicted squarely with the

core theory of the government's case as presented in the original indictment six months earlier and then re-stated in the superseding indictment which had just been issued, though sealed, several days before the warrant affidavit was submitted. That first and continuing government theory of the case was that Mrs. Wharton had defrauded the SSA in asserting that she lived separately from her husband at the Utrecht address. For the government to concede the possibility that the Whartons lived apart (or to concede even that a probable cause determination **required** an assessment of the known evidence underlying that situation) would be to implicitly acknowledge a factual conclusion that contradicted the government's central theory, and would call into question the integrity of the government's case.

**8.  Under Fourth Circuit law, after the defense has made a substantial preliminary showing, the burden is on the defense to show that inclusion of the omitted information would defeat probable cause.**

*United States v. Tate*, 524 F.3d 449, 457 (4th Cir.2008) (holding that once the defense has made a "substantial preliminary showing", it is entitled to a *Franks* hearing; at the *Franks* hearing, the defense is required to prove by a preponderance of the evidence that if the omitted facts had been disclosed, there would not have been probable cause).

Here, the omitted information is the true and complete account of the information from LeSean Wharton and Tasha Muriel and/or all of the other indicia of separate living quarters recited in paragraph 5 above.  Given the absence of information in the balance of the affidavit that John Wharton evidence was in Joeann Wharton's area, Magistrate Judge Gallagher could not (and would not) have issued a warrant to search the area under Joeann Wharton's control.

**9.  If the defense has established that the affiant recklessly or intentionally disregarded information which should have been included in the affidavit, the good**

**faith exception to the exclusionary rule does not apply.**

If the defense has shown that the affiant recklessly or intentionally omitted material information from the affidavit, the defense has met its burden under *Franks*. In that situation, the good faith exception to the exclusionary rule simply does not apply.  *United States v. Leon*, 468 U.S. 897, 923 (1984) ("Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S.154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The exception we recognize today **will also not apply** in cases. . .")(emphasis supplied) .

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____
JOSEPH L. EVANS, 02055
SUSIE HENSLER, 95180
Staff Attorneys
Tower II - Ninth Floor
100 South Charles Street
Baltimore, MD 21201
(410) 962-3962 (telephone)
(410) 962-0872  (facsimile)
joseph_evans@fd.org
susie_hensler@fd.org